UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AZHAR LAL,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION et al.,<br><br>    Defendants. | No. CV 18-2056-CJC (DFM)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## INTRODUCTION

On March 13, 2018, Azhar Lal ("Plaintiff"), a prisoner at California State Prison-Los Angeles County ("CSP-LA"), filed pro se this civil rights action under 42 U.S.C. § 1983, and sought leave to proceed without prepayment of filing fees. See Dkt. 1 ("Complaint"), 2. The Court granted Plaintiff's request to proceed without prepayment of filing fees. See Dkt. 5. The Complaint also sought a temporary restraining order and preliminary injunction, both of which the Court denied. See Dkt. 4.

| | |
|---|---|
| 1 | The Complaint names the following defendants in their individual and |
| 2 | official capacity: (1) John Doe #1, Receive and Release Sergeant ("R&R |
| 3 | Sergeant"); (2) T. Rhodes; (3) D. Pixley; (4) D. Castro; and (5) John Doe #2, |
| 4 | Dr. Edwards. See Complaint at 3-4. The Complaint also names "John Does 3- |
| 5 | 9." Id. at 4. Plaintiff alleges claims of failure to protect and cruel and unusual |
| 6 | punishment under the Eighth Amendment and retaliation under the First |
| 7 | Amendment. See id. at 5. Injunctive relief aside, Plaintiff also seeks |
| 8 | compensatory and punitive damages. See id. at 24. |
| 9 | Under 28 U.S.C. § 1915(e)(2) and 1915A, the Court must screen the |
| 10 | Complaint to determine whether it is frivolous or malicious, fails to state a |
| 11 | claim on which relief might be granted, or seeks monetary relief against a |
| 12 | defendant who is immune from such relief. As discussed below, the Complaint |
| 13 | suffers from numerous deficiencies and must be dismissed. |

## II.
## SUMMARY OF ALLEGATIONS

### A.  Plaintiff's Double-Celling and Subsequent Injury

Plaintiff alleges that dating back to 1994, he has had multiple fights with his cell mates, has received multiple Rules Violation Reports ("RVRs") for refusing a cell partner, and has had multiple medical and mental evaluations documenting his disposition to aggressive and assaultive behavior. See Complaint at 5-13. Plaintiff also states that he was routinely placed in administrative segregation for refusing double-celling. See id. at 6-8, 11-12.

On November 21, 2016, Plaintiff was transferred from Kern Valley State Prison to CSP-LA, where he was assigned to a double cell. See id. at 11. Plaintiff informed R&R Sergeant about his history of violence with his previous cell mates, his receipt of numerous RVRs for refusing cell partners, and his placement into administrative segregation and the behavioral modification unit program for these refusals. See id. at 12. Plaintiff requested

assignment to a single cell, but R&R Sergeant told plaintiff that there was no available bed space at that time and that he "better comply with the rules" or he would be "removed from the EOP [Enhanced Outpatient Program] and instead placed in Ad-Seg." Id. Plaintiff reiterated that it would be unsafe to house him in a double cell, but R&R Sergeant told Plaintiff that he "better accept this housing assignment if [he] knew what was good for [him]." Id. R&R Sergeant also assured Plaintiff that he would contact EOP staff to move Plaintiff to a single cell once one becomes available. See id.

On November 22, 2016, Plaintiff and his cell mate got into a fight. See id. at 12-13. After the fight was broken up, Plaintiff was issued another RVR and was relocated to a separate housing unit, where Plaintiff observed 30-40 vacant cells. See id. Plaintiff learned from another inmate that these cells had been vacant for "over a week or two." Id. From his fight, Plaintiff suffered lasting injuries to his right arm and lower back. See id. at 13.

Legally, Plaintiff alleges that the R&R Sergeant failed to protect Plaintiff in violation of the Eighth Amendment by failing to review adequately the Inmate Central Files, which demonstrated Plaintiff's propensity for violence and history of double-celling problems. See id. at 14. Plaintiff also contends that R&R Sergeant lied about the prison having no single-cell housing available. See id. These actions, Plaintiff claims, demonstrate R&R Sergeant's "total disregard for inmate safety as well as for [the] procedures for which he was required to follow." Id.

**B.     Plaintiff's Administrative Appeals**

In December 2016, before his annual review, Plaintiff filed a formal request to be single-celled due to his history of in-cell violence. See id. Also anticipating this meeting, Pixley, Plaintiff's counselor, called Plaintiff into his office and informed Plaintiff that he had already prepared Plaintiff's committee chronology report without Plaintiff's single-cell request and that he "[did]n't

3

want to change it," as doing so "would only be creating more work for him for no reason." Id. Upon hearing Plaintiff's objection, Pixley allegedly "got mad" and reminded Plaintiff that the report was already written and that Plaintiff needed to "learn how to comply with his directions otherwise [he] could find [him]self in a far wo[rs]e situation for not listening." Id. at 14-15. Consequently, Plaintiff drafted a separate committee statement that documented his prior instances of violence against cell mates. See id. at 15.

On January 24, 2017, at Plaintiff's Unit Classification Committee ("UCC") meeting, Plaintiff allegedly gave Rhodes, another correctional counselor, the separate committee statement. See id. Plaintiff alleges that Rhodes was to give his statement to the facility captain, who was absent from the UCC meeting. See id. Plaintiff's single-celling request was eventually denied, so Plaintiff filed an administrative grievance in which he sought approval for single celling from the captain of his facility. See id. at 15-16. Rhodes conducted the appeals interview and was allegedly "very upset," accusing Plaintiff of attempting to make him look bad. See id. Plaintiff further alleges that Rhodes complained about the additional work created for him because of Plaintiff's "crying" for a single cell, "which [he] will probably never get due to complaining." Id. Plaintiff's first-level appeal was denied on February 17, 2017, see Dkt. 1-1 at 33-34, and Plaintiff filed an appeal at the second level, see Complaint at 16.

On March 27, 2017, Plaintiff's second-level appeal was partially granted, and his grievance was remanded for further review on grounds that Plaintiff's mental health "was not considered during UCC." Complaint at 16. Accordingly, on April 11, 2017, Plaintiff appeared at a further committee meeting before Captain Freeman, Rhodes, Pixley, Castro, and Dr. Edwards to assess Plaintiff's mental health needs. See id. at 17. At this meeting, the committing members allegedly laughed at Plaintiff, warned him not to

complain, cry, or file any more complaints for the same grievance, and informed him that he did not have sufficient in-cell violence to warrant transferring him to a single cell. See id. Plaintiff's first-level appeal was, again, denied, and Plaintiff appealed to the second level—complaining that he was never notified of the mental health component of the committee meeting and thus could not bring someone from his own mental health team to participate. See id. Plaintiff's second-level appeal was denied, and Plaintiff filed a subsequent third-level appeal, which was also denied. See id. at 17-18; see also Dkt. 1-1 at 81-83.

As a matter of law, Plaintiff alleges that Rhodes, Pixley, Castro, and Dr. Edwards violated his First Amendment rights by denying his single-celling request in retaliation for his filing multiple grievances seeking the same. See Complaint at 18. Plaintiff further claims that Defendants were "mad at [him]" for appealing his January 24, 2017, committee action, which was later partially overturned at the second level. See id. at 18.

## III.
## STANDARD OF REVIEW

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Since Plaintiff is appearing pro se, the Court must also construe the allegations of the complaint liberally and afford Plaintiff the benefit of any doubt. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v.

Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. See id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration,

it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. See Cato, 70 F.3d at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment").

## IV.
## DISCUSSION

### A. Official Capacity

The Complaint names each individual defendant in his or her official capacity. See Complaint at 3-4. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166. Here, Defendants are officers or agents of the California Department of Corrections and Rehabilitation ("CDCR"). Therefore, all of Plaintiff's claims against Defendants in their official capacity are tantamount to claims against the CDCR.

States, state agencies, and state officials sued in their official capacities are not persons subject to civil rights claims for damages under 42 U.S.C. § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64-66 (1989); see also Hafer v. Melo, 502 U.S. 21, 27-30 (1991) (clarifying that the Eleventh Amendment does not bar suits against state officials sued in their individual capacities nor for prospective injunctive relief against state officials sued in

their official capacities). The CDCR is an agency of the State of California, and is therefore entitled to Eleventh Amendment immunity. See Brown v. Cal. Dep't of Corrs., 554 F.3d 747, 752 (9th Cir. 2009).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have "unequivocally expressed" its consent to waive its sovereign immunity or Congress must have abrogated it. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). California has consented to be sued in its own courts pursuant to the California Tort Claims Act, but such consent does not constitute consent to suit in federal court. See BV Eng'g v. Univ. of Cal., L.A., 858 F.2d 1394, 1396 (9th Cir. 1988). Furthermore, Congress has not abrogated sovereign immunity against suits under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 341 (1979).

Accordingly, to the extent Plaintiff seeks monetary damages against the Defendants in their official capacity, the Eleventh Amendment bars such claims.

**B.     Failure to Protect**

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. See id. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health. See id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. The

Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837; Anderson v. Cty. of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. See Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995); see also Cranford v. Ahlin, 610 F. App'x 714, 714 (9th Cir. 2015) (to state a failure to protect claim, a plaintiff must allege facts "to show that defendants knew of any threats to his safety or deviated from professional standards by disregarding known unsafe conditions").

Here, Plaintiff alleges that R&R Sergeant was deliberately indifferent to Plaintiff's safety because he failed to review adequately the Inmate Central Files and because he lied about the available bed space for single-cell housing. See Complaint at 14. At most, the Complaint pleads a claim for negligence, not rising to the level of deliberate indifference. See Farmer, 511 U.S. at 835. Plaintiff states that "R&R Sergeant did not adequately review both of the Inmate Central Files during th[e] Housing Assignment"—files that would have demonstrated Plaintiff's propensity for violence against cell mates. Complaint at 14. This allegation suggests that R&R Sergeant was merely negligent in his review and execution of the Inmate Housing Assignment Guidelines. Moreover, while Plaintiff alleges that he verbally informed R&R Sergeant of his prior RVR and cellmate fight history, nothing in the Complaint suggests that R&R Sergeant acted recklessly by "temporarily" housing Plaintiff with a

cellmate pending a move to a vacant cell once one became available. Id.; see also id. at 12. Indeed, R&R Sergeant's suspicion of potential harm alone does not plausibly show that he responded with deliberate indifference under the circumstances. See Roberts v. Cal. Dep't of Corrs. & Rehab., No. 16-1929, 2017 WL 3635175, at *10 (C.D. Cal. Aug. 22, 2017) (finding suspicion of possibility of violence between inmates as insufficient to show knowledge of substantial risk of serious harm for deliberate indifference claim); see also Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (prison officials "must have more than a mere suspicion that an attack will occur" before they are obligated to take steps to prevent an inmate assault) (citations and internal quotation marks omitted). Plaintiff also alleges, in conclusory fashion, that R&R Sergeant lied about the availability of other vacant cells. See id. at 14. But Plaintiff states no facts to show that R&R Sergeant knew of the cell vacancies and chose to lie to Plaintiff. To the contrary, the Complaint states that R&R Sergeant promised to "contact EOP Staff" and "make arrangements with them that [Plaintiff] be moved immediately once a vacant cell becomes available[,] which should be no longer than a week if not earlier." Id. at 12. This transfer never could have occurred, however, because Plaintiff and his cellmate fought the very next day. See id. Because Plaintiff has not alleged sufficient facts to show that R&R Sergeant knew of and disregarded an excessive risk to Plaintiff's health and safety, Plaintiff fails to state a claim for failure to protect. Accordingly, Plaintiff's alleged Eighth Amendment violation must be dismissed.

**C.   Retaliation**

Allegations of retaliation against an inmate's First Amendment rights may support a § 1983 claim. See Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). To satisfy the causation element, plaintiff must show that his constitutionally-protected conduct was a "substantial" or "motivating" factor for the alleged retaliatory action. Brodheim, 584 F.3d at 1271 (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Here, Plaintiff alleges that Rhodes, Pixley, Castro, and Dr. Edwards retaliated against Plaintiff by denying him single celling because he filed too many grievances seeking the same relief and because Defendants were mad at Plaintiff for appealing his January 24, 2017, committee action. See Complaint at 18. While Plaintiff raises several instances where certain individual defendants were allegedly frustrated—e.g., Rhodes being "upset" that Plaintiff was trying to make him look bad, see id. at 16, and Pixley getting "mad" because he did not want to amend Plaintiff's UCC chronology, see id. at 14-15—Plaintiff has not satisfied the causation element necessary to state a retaliation claim under § 1983. Importantly, Plaintiff fails to state how Defendants' alleged frustration with Plaintiff or with his multiple grievances was a substantial or motivating factor in denying him single-celling. Instead, the Complaint states that Defendants told Plaintiff that he did not have "enough in-cell violence" to justify single-celling him. Id. at 17. Causation aside, Plaintiff also fails to state how his denial of single celling did not reasonably advance a legitimate correctional goal or was otherwise arbitrary or

11

capricious. See Rhodes, 408 F.3d at 567-68; Watison, 668 F.3d at 1115. Absent allegations in support of these two elements, Plaintiff fails to state a claim for retaliation. Accordingly, Plaintiff's claim against Rhodes, Pixley, Castro, and Dr. Edwards also must be dismissed.

## V.
## CONCLUSION

For the reasons discussed above, the Complaint fails to state a claim upon which relief may be granted, and thus it must be dismissed. Because it is not absolutely clear that the Complaint's deficiencies cannot be cured by amendment, dismissal is with leave to amend. Accordingly, if Plaintiff desires to pursue his claims, he must file a First Amended Complaint ("FAC") within thirty-five (35) days of the date of this Order, remedying the deficiencies discussed above. The FAC should bear the docket number assigned in this case, be labeled "First Amended Complaint," and be complete in and of itself without reference to the prior complaints or any other pleading, attachment, or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to use.

**Plaintiff is admonished that if he fails to timely file a timely FAC this action may be dismissed with prejudice for failure to diligently prosecute and for the reasons discussed in this Order.**

Dated: August 31, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge